UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**THOMAS EDWARD SPRINGER,**

**Petitioner,**

**-vs-**                                                      **Case No.  6:07-cv-974-Orl-19DAB**

**UNITED STATES OF AMERICA,**

**Respondent.**

_____

# ORDER

This cause came on before the Court on the following:

1.     Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by Person in

Custody (Doc. No. 1, filed June 11, 2007);

2.     Second Memorandum of Points and Authorities in Support of Motion to Vacate, Correct, or

Set Aside a Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 (Doc.

No. 8, filed Dec. 17, 2007); and

3.     Response of the United States of America in Opposition to Motion to Vacate, Set Aside, or

Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. No. 12, filed Apr. 21, 2008).[1]

## Background

Petitioner Thomas Edward Springer has moved the Court to vacate his conviction and

sentence for the unlawful possession of a firearm by a convicted felon under 18 U.S.C. §§ 922(g)(1)

and 924(a)(2).  He raises four grounds in support of his request: claims of ineffective assistance of

---

[1]     Springer was permitted until August 14, 2008 to file a Reply to the Government's
Response.  (Doc. No. 14.)  He did not file a reply.

counsel at both the trial and appellate levels, a claim that the Government relied on false testimony and concealed a witness, and a claim that the court improperly sentenced him in violation of *United States v. Booker*, 543 U.S. 220 (2005).

Springer was arrested on March 16, 2004 after police responded to a 911 call placed from his home. (Cr. Doc. No. 53 at 10-12.)  Deputy Michael Nelson of the Seminole County Sheriff's Office knocked on the door of the residence, heard no response, and then entered upon hearing a male voice yelling. (*Id.* at 18.)  He found Springer's wife, Diane Springer, in a backroom of the house, visibly upset and injured. (*Id.* at 30.)  Deputy Nelson then found Springer and arrested him on battery charges. (*Id.* at 37-39; Cr. Doc. No. 144 at 112.)  Deputies initially found three firearms in the home while locating Springer and later found three additional firearms while retrieving medication that Springer needed while in jail. (Cr. Doc. No. 144 at 111, 144, 176-77.)  Both Springer and his wife informed the deputies at some point that Springer was a convicted felon. (*Id.* at 129.)  Later that evening, and after Springer had been arrested, Diane Springer called the Seminole County Sheriff's Office and showed the responding deputy four additional firearms that she located in the home. (*Id.* at 219-25.)

On September 15, 2004, a grand jury returned a superseding indictment charging Springer with two crimes:  possessing seven firearms as a convicted felon in violation of 18 U.S.C. §§ 922(g) and 924(a)(2) (count one), and possessing a shotgun with a barrel of less than eighteen inches that was not registered to him, in violation of 26 U.S.C. §§ 5861(d) and 5871 (count two). (Cr. Doc. No. 26.)  Following a five day trial, the jury was unable to reach a verdict on count one and acquitted Springer on count two. (Cr. Doc. Nos. 72, 73.)  Springer was then tried a second time on count one. During this second trial, the jury found Springer guilty of possessing three of the firearms charged

in the indictment: a shotgun and two rifles.  (Cr. Doc. Nos. 99, 101.)  On April 25, 2005, the Court

sentenced Springer to fifty-one months' imprisonment to be followed by two years of supervised

release.[2]  (Cr. Doc. Nos. 124, 126.)

Springer appealed, raising two grounds in support: (1) that his Sixth Amendment right to

confront witnesses was violated by the Government's expert witness's reliance on hearsay to

establish that the various firearms that Springer was accused of possessing affected interstate

commerce; and (2) that the Court should have granted a mistrial when a Government witness,

Deputy Nelson, testified during cross-examination that Diane Springer feared, following acts of

domestic violence, that Springer would use weapons on her.  (Doc. No. 1-2.)  The Eleventh Circuit

affirmed the Court's rulings in an unpublished opinion.  *United States v. Springer*, 165 F. App'x 709

(11th Cir. 2006).  Springer unsuccessfully moved for a rehearing, but he did not seek certiorari

review.  On June 5, 2007, he filed this timely section 2255 motion.  (Doc. No. 1.)  The facts specific

to each of his claims are explained in greater detail below.

## Standards of Review

### I.      General Right to Relief under Section 2255

Section 2255 provides federal prisoners with an avenue for relief under limited

circumstances:

---

[2]       Springer is scheduled to be released from prison on November 17, 2008.  While he will no longer be "in custody" in a technical sense, convicted persons who are placed under supervised relief are still considered to be "in custody" for purposes of filing a section 2255 motion.  *E.g.*, *Mitchell v. Middlebrooks*, No. 07-15047, 2008 WL 2787528, at *2 (11th Cir. July 18, 2008) ("[A]lthough Mitchell's original petition requested release, he has since asked for permission to modify the request for relief to include the termination of his supervised release.  Success for Mitchell in his § 2241 petition could, therefore, 'alter the supervised release portion of his sentence.'"(citation omitted)).

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (2006).  Thus, a federal prisoner may only obtain relief under Section 2255 if his sentence (a) was imposed in violation of the Constitution or federal laws, (b) was imposed by a court without jurisdiction to do so, (c) was in excess of the maximum permitted by the law, or (d) is otherwise subject to attack.  *Id.*; *see also Boccio v. United States*, Nos. 6:05-cv-179-Orl-19DAB, 6:02-cr-189-Orl-19DAB, 2006 WL 4761060, at *4 (M.D. Fla. Oct. 20, 2006).  If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255.  To obtain this relief on collateral review, however, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982) (rejecting the plain error standard as not sufficiently deferential to a final judgment).

## II.     Claims for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[3]  *Id.* at 687-88.  A court must adhere to a strong presumption

---

[3]      In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the Supreme Court clarified that (continued...)

that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id*. at 689-90.  "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir.), *cert. denied*, 493 U.S. 945 (1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight.  *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted), *cert. denied*, 514 U.S. 1131 (1995).  Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## III.  Procedural Bar

"[A] defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding.  This rule generally applies to all claims, including constitutional claims."  *Lynn v.*

---

[3](...continued)
the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

*United States*, 365 F.3d 1225, 1234 (11th Cir.) (citations omitted), *cert. denied*, 543 U.S. 891 (2004);

*Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994), *cert. denied*, 514 U.S. 1112 (1995).

However, a defendant can avoid the procedural bar by demonstrating the applicability of one of the

two exceptions: (a) cause and prejudice for the failure to raise the claim on direct appeal or (b) "a

constitutional violation has probably resulted in the conviction of one who is actually innocent."

*Mills*, 36 F.3d at 1055.

## Analysis of Springer's Claims

### I.      Claim One: Ineffective Assistance of Counsel at Trial

Springer first claims that his trial counsel's performance was constitutionally deficient in five

respects: (1) by failing to properly object to violations of the Confrontation Clause through the

Government expert witness's reliance on hearsay to establish that the possessed firearms had

affected interstate commerce; (2) by failing to object to "inflammatory evidence" regarding the

sawed-off shotgun that was the subject of count two of the indictment; (3) by opening the door to

prejudicial testimony about Diane Springer's fear that Springer would harm her with the weapons

found in the house; (4) by failing to subpoena Diane Springer and other witnesses to testify during

the second trial; and (5) by failing to investigate whether Springer was "set up" by Diane Springer.

(Doc. No. 8 at 10-27.)

### A.      The Government Expert's Testimony

During the second trial, the Government proffered Special Agent Alina Polak as an expert

witness to testify about the manufacturing site of the firearms which Springer was accused of

possessing.  The testimony, which depended in part on information from gun manufacturers, was

introduced to establish the jurisdictional requirement that the firearms had affected interstate

commerce.  (Cr. Doc. No. 144 at 254.)  Springer's counsel objected to the testimony several times.  (*E.g.*, *id.* at 258.)  However, Springer contends that his counsel failed to specifically mention the "Confrontation Clause" and Federal Rule of Evidence 703 as the bases of his objections.  (Doc. No. 8 at 11.)  On appeal, the Eleventh Circuit noted this deficiency and applied the plain error standard of review because the objection was not properly preserved.  (*See id.*)  Springer argues that the Eleventh Circuit would have reversed this Court's ruling had counsel preserved the objection and allowed the appellate court to apply a stricter standard of review.  (*Id.*)

The Government argues that Springer cannot demonstrate prejudice from this shortcoming because the Eleventh Circuit would have reached the same conclusion even under a more scrutinizing standard of review.   (Doc. No. 12 at 17-18.)  The Court agrees.  As an alternative ground for its holding, the Eleventh Circuit noted:

> In addition, Springer appears to challenge the "interstate commerce nexus," however, he neglects to mention that each of the firearms forming the basis for his conviction [was] stamped with the city and state in which they were manufactured. Since each of the firearms was stamped with a state other than Florida, and Polak's expert opinion was that the guns were not restamped, when the guns were discovered and found by a jury to be in Springer's possession in Florida, sufficient admissible evidence supported his conviction.

*Springer*, 165 F. App'x at 716-17.  Thus, sufficient evidence existed to establish this jurisdictional requirement irrespective of the portion of Polak's testimony that relied on hearsay.  *See id.*  Accordingly, Springer was not prejudiced by trial counsel's failure to properly object to the expert's testimony on the grounds of testimonial hearsay..

## B.      Inflammatory Evidence of the Sawed-Off Shotgun

Springer next argues that trial counsel was ineffective by failing to object to the Government's display of an antique sawed-off shotgun to the jury. (Doc. No. 8 at 12-13.)  During

the first trial, the jury had acquitted Springer on the charges relating to this shotgun.  Nevertheless, the shotgun was among a collection of firearms that the Government brought before the jury during the second trial and entered into evidence.  (*See* Cr. Doc. No. 103.)  Springer's trial counsel did not object to the presence of this gun or its entrance into evidence.  Springer now contends that this failure to object under Federal Rules of Evidence 403 and 404(b) was prejudicial because it tipped the scales in what he characterizes as a fairly close trial.  (Doc. No. 8 at 13-14.)

Despite his contention, however, Springer fails to explain exactly how the presence of this additional firearm among the nine others led to a fundamentally unfair or unreliable result. Springer's theory is that he was prejudiced because the gun was introduced to "inflame the jury and depict [him] as a dangerous individual."  (*Id.* at 13.)  Springer is correct to the extent that his trial counsel may have been able to present a plausible argument under Federal Rule of Evidence 403 to exclude this evidence.  But if the Court were to exclude the additional gun, it would have been because the gun was of little probative value in establishing that Springer possessed the other nine guns, not because the danger of prejudice was particularly strong.  *See* Fed. R. Evid. 403 (establishing a balancing test whereby evidence should be excluded only if the danger of unfair prejudice substantially outweighs the probative value); *United States v. Corbin*, 734 F.2d 643, 656 (11th Cir. 1984) (admissibility of extrinsic criminal behavior under Rule 403).  In other words, the presence of an antique sawed-off shotgun on a cart of nine other firearms, as opposed to just the cart of nine firearms, does not lend itself to a much stronger inference that the accused possessor of the firearms is dangerous.  Moreover, Agent Polak testified in front of the jury that the shotgun was one of three antique weapons found at Springer's home that could lawfully be possessed by a convicted

felon. (Cr. Doc. 144 at 268.) Thus, Springer was not sufficiently prejudiced under *Strickland* by the inclusion of the sawed-off shotgun among the other firearms to warrant relief.

Furthermore, as the Government notes with respect to Rule 404(b), the shotgun, the subject of count two, was found with the seven other firearms that were the subject of count one. Thus, the shotgun was "intertwined" with the evidence of the other firearms. *United States v. Thomas*, 242 F.3d 1028, 1031-32 (11th Cir. 2001) (allowing the government to introduce evidence of narcotics found with a firearm to prove that the defendant possessed the firearm in violation of 18 U.S.C. § 922(g)). Therefore, the shotgun could be offered into evidence for the legitimate purpose of demonstrating that it was among a collection of weapons found at Springer's home, and Rule 404(b) is not implicated. *See id.* Accordingly, an objection on this ground would not have been sustained, and Springer was not prejudiced by his counsel's failure to raise it.

### C.       Opening the Door

Springer next argues that his trial counsel was ineffective for opening the door to prejudicial testimony regarding spousal abuse. (Doc. No. 8 at 14-15.) While cross-examining Deputy Nelson, Springer's counsel asked several questions which elicited testimony from Nelson regarding Diane Springer's fear that Springer would use a weapon on her. (Cr. Doc. No. 144 at 148-50.) Counsel did not move to strike the testimony,[4] but he asked for a mistrial on the grounds that the testimony violated an agreement with the Government that neither party would introduce evidence of spousal abuse. (*Id.* at 150.) The Court denied the request. (*Id.*) On appeal the Eleventh Circuit found that a mistrial was not warranted, in part, because it was "Springer's counsel, not the Government, who

---

[4]      Counsel did "object" after Deputy Nelson gave his answer. However, the Court noted that counsel was objecting to his own question. (Cr. Doc. No. 144 at 150.)

elicited the testimony in question by asking one question too many." *Springer*, 165 F. App'x at 718.

Springer seizes on this observation by the Eleventh Circuit, contending that trial counsel's error

rendered his representation constitutionally deficient.

While Springer's counsel may have made an error in hindsight, a backfired trial strategy is

not grounds for establishing ineffective assistance of counsel.  As the Supreme Court explained in

*Strickland*:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too
> tempting for a defendant to second-guess counsel's assistance after conviction or
> adverse sentence, and it is all too easy for a court, examining counsel's defense after
> it has proved unsuccessful, to conclude that a particular act or omission of counsel
> was unreasonable.

*Strickland*, 466 U.S. at 689 (citation omitted).  Further, "[t]he appropriate legal standard is not error-

free representation, but reasonableness in all the circumstances, applying a heavy measure of

deference to counsel's judgments."  *Foster v. Dugger*, 823 F.2d 402, 405 (11th Cir. 1987) (internal

quotation marks omitted), *cert. denied*, 487 U.S. 1241 (1988).

Springer fails to establish the deficiency prong of *Strickland*.  The record suggests that part

of trial counsel's strategy in questioning Deputy Nelson was to discredit Diane Springer and

establish that she had framed Thomas Springer.  (*See, e.g.*, Cr. Doc. No. 146 at 59 where Springer's

counsel argued during closing statements that there was evidence that the guns might have been

planted.)  Both the general strategy pursued and the specific questions asked were reasonable at the

time.  That the strategy ultimately elicited damaging testimony is not grounds to prove that trial

counsel's performance was constitutionally deficient.  *Strickland*, 466 U.S. at 689.

### D.    Failure to Issue Subpoenas

Springer next argues that his trial counsel was ineffective by failing to subpoena Diane Springer to testify in the second trial.  (Doc. No. 8 at 15-16.)  Springer contends that it was Diane Springer's erratic and incredible testimony during the first trial that allowed him to be acquitted on count two and nearly provided him with an acquittal on count one.  (*Id.*)  Diane Springer did not testify for the Government during the second trial, and the Government contended that it did not know of her whereabouts.  (*Id.*; Doc. No. 12 at 13-14.)  Springer argues that Diane Springer should have testified at the second trial, allowing his counsel to discredit her and help prove that she had framed him.  (Doc. No. 8 at 13-14.)  In addition, Springer argues that trial counsel should have subpoenaed Thad Olivent, Denise Edwards, Steven Roche, and an independent forensics expert to testify.  (*Id.* at 16-21.)

There are several problems with this line of argument.  First, as a general matter, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted).  Hence, the "petitioner must first make a sufficient factual showing, substantiating the proposed witness testimony." *Percival v. Marshall*, No. C-93-20068 RPA, 1996 WL 107279, at *3 (N.D. Cal. March 7, 1996), *aff'd*, No. 96-15724, 1997 WL 31219 (9th Cir. Jan. 23, 1997).  "Such evidence might be sworn affidavits or depositions from the potential witnesses stating to what they would have testified." *Id.*  Springer has failed to present evidence of actual testimony or any affidavit of alleged testimony from the putative witnesses and therefore has not made the requisite factual showing.  In addition, the

Government correctly notes that Springer could not have called Diane Springer during the second trial for the sole purpose of impeaching her. *See, e.g.*, *Pennsylvania v. Ritchie*, 480 U.S. 39, 66 (1987) (impeachment evidence is relevant only after the witness to be impeached has testified). Accordingly, Springer fails to demonstrate that his trial counsel was ineffective for failing to subpoena and call these witnesses.

### E.     Counsel's Failure to Investigate a Potential Setup

Springer argues that trial counsel failed to investigate or call witnesses to present the theory that he was framed.  (Doc. No. 8 at 21-26.) Springer presents a number of facts which he states should have been presented to the jury, and he generally avers that trial counsel failed to "debrief" him to gather this information.  (*Id.*)  However, Springer also argues that his counsel was aware that he had been framed.  (*Id.*)  All of the alleged facts relate to Springer's theory that Diane Springer was having an extramarital affair, wanted to leave him, and consulted with her brother, a former police officer, to orchestrate a plan to frame him.  (*See id.*)  Springer draws most of the facts from either his own affidavit or from his verified complaint in a separately filed civil suit.  (*See id.* (citing exhibits D and G to his Motion).)  Except for presenting a receipt for a duplicate key and referring to what he characterizes as his wife's coached testimony during the first trial, Springer does not present any corroborating evidence in support of his theory.

To prove that his trial counsel's failure to investigate amounted to a constitutional deficiency, Springer must show (a) the exact manner in which the investigation or preparation was inadequate, including any information that would have been obtained from the investigation, and (b) whether such information, assuming its admissibility in court, would have produced a different result.  *See United States ex rel. Cross v. DeRobertis*, 811 F.2d 1008, 1016 (7th Cir. 1987) (the focus of the

*Strickland* inquiry must be on what information would have produced a different result); *Flores v. Johnson*, 957 F. Supp. 893, 912 (W.D. Tex. 1997) (to show ineffective assistance of counsel, the petitioner must do more than merely allege a failure to investigate; rather, the petitioner must state specifically what the investigation would have revealed, what evidence would have resulted, and how the outcome of the case would have been altered).  The party must provide evidence, not mere conclusory allegations, that counsel overlooked exculpatory information.  *Barkauskas v. Lane*, 946 F.2d 1292, 1295 (7th Cir. 1991); *cf. Aldrich v. Wainwright*, 777 F.2d 630, 637 (11th Cir. 1985)(speculation insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation), *cert. denied*, 479 U.S. 918 (1986).

Springer fails to explain how his trial counsel's investigation was deficient except for generally stating that his counsel failed to properly consult with him.  (Doc. No. 8 at 24 (explaining that "trial counsel never debriefed Mr. Springer to harvest facts pertinent to the case").)  Thus, to the extent Springer claims that trial counsel was ineffective for failing to investigate the alleged setup, he has not satisfied his burden to prove exactly how the investigation was deficient.

To the extent Springer argues that his trial counsel erred by failing to call certain witnesses or develop certain facts through Springer's testimony, the Court is satisfied that his counsel's decision was a reasonable strategic decision in light of the elaborate nature of Springer's theory and the lack of substantiating evidence.  The crux of Springer's claim appears to be that counsel failed to explore all of the factual circumstances of Springer's alleged setup.  But as Springer himself observes, the details of his rather remarkable theory sound more like a movie than a typical legal defense, and it is clear from Springer's affidavit that most of the story would need to have been developed through his own testimony.  As such, there was a substantial risk that this strategy would

threaten the general credibility of Springer's defense.  In sum, counsel's omission of these details from Springer's defense was a strategic decision that is due deference under *Strickland*. Accordingly, Springer has not satisfied the deficiency prong of *Strickland*.

## II.   Ground Two: Ineffective Assistance of Counsel on Appeal

### A.   Failure to Appeal the Court's Refusal to Suppress Evidence

Springer first argues that his appellate counsel was ineffective for failing to challenge the Court's refusal to suppress evidence.  (Doc. No. 8 at 27-31.)  Prior to the first trial, the Court rejected trial counsel's attempt to suppress evidence based on an allegedly unlawful entry onto Springer's property and allegedly unlawful arrest.  (Cr. Doc. No. 55 at 1.) The Court noted that Deputy Nelson was validly on Springer's property because he was responding to a 911 call and reasonably believed that there was an emergency which required immediate response.  (*Id.* at 7.) This conclusion was based on Nelson's conversation with the dispatcher and his observations while on the scene.  (*Id.*)  Thus, Deputy Nelson had cause to enter the home without a warrant, and he had probable cause to arrest Springer based on his belief that a domestic battery had occurred.  (*Id.* at 7-8.)  The seizure of the firearms was appropriate because they were in plain view.  (*Id.*)

The Court's conclusion was prompted by two Eleventh Circuit cases that involved very similar facts: *United States v. Holloway*, 290 F.3d 1331, 1334-41 (11th Cir. 2002) and *United States v. Roger*, 924 F.2d 219, 222-23 (11th Cir. 1991).  Thus, the likelihood of Springer prevailing on appeal on this issue was low, and Springer's appellate counsel cannot be labeled ineffective for failing to raise a weak issue on appeal.  *Shere v. Sec'y, Fla. Dept. of Corr.*, 537 F.3d 1304, 1311 (11th Cir. 2008).

**B.      Failure to Challenge the Qualifications of the Government's Expert Witness**

Springer next contends that his appellate counsel did not challenge Agent Polak's qualifications as an expert witness.  (Doc. No. 8 at 30.)  Like Springer's previous claim, this argument would have been unlikely to succeed on appeal.  Springer contends that Agent Polak did not actually use her own "specialized knowledge"; she merely "aggregat[ed] the expert opinion of others to compile a report."  (*Id.*)  The problem with this criticism is that ATF agents routinely testify in felon in possession cases, and like other technical experts, they often base part of their own opinions on the opinions of others.  *E.g.*, *United States v. Allen*, 190 F. App'x 785, 787 (11th Cir. 2006) ("Experts may rely on hearsay if it is of the type of evidence reasonably relied on by experts in the particular field.  In this instance, it was reasonable for [the ATF agent] to rely on what the other agent told him.  He based his opinion as well on the markings on the gun, his personal knowledge concerning the manufacture and distribution of guns, and his review of industry-wide publications, including The Blue Book of Gun Values."); *United States v. Vasser*, 163 F. App'x 374, 376 (6th Cir. 2006) ("Oxley was properly qualified to testify as to the location of the firearms' manufacture and therefore as to his opinion whether the firearms had traveled in interstate commerce.  He had over fifteen years of law enforcement experience and had been employed by ATF for nearly six years.  He demonstrated specialized training in the area of interstate nexus identification and had testified as an interstate nexus expert in federal court over sixty times."); *United States v. Smith*, 153 F. App'x 187, 190 (4th Cir. 2005) ("It was established at trial that Baucom was an ATF agent who had extensive training in firearms, had handled 2000 firearms since his first interstate nexus training, and had previously testified in court regarding the interstate nexus of firearms after having received advanced specialized training on the subject in 2002. We therefore

conclude that the trial court did not abuse its discretion by admitting Agent Baucom's testimony."). Springer fails to point out any specific shortcomings in Agent Polak's qualifications or methodology which might have precluded the admission of her testimony under Federal Rules of Evidence 702 or 703.[5] Furthermore, the Court's ruling would have been reviewed under the relatively deferential abuse of discretion standard. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141-42 (1999). Accordingly, this argument was unlikely to prevail, and Springer's appellate counsel was not ineffective for failing to raise it. *Shere*, 537 F.3d at 1311.

### C.    Prosecutorial Misconduct

Springer also contends that his appellate counsel was ineffective for failing to raise on appeal the Government's alleged misconduct. (Doc. No. 8 at 31.) Specifically, Springer contends that the Government knowingly relied on the false testimony of Diane Springer and Springer's son. Springer also argues that the Government concealed the whereabouts of Diane Springer so that Springer could not call her to testify. (*Id.* at 31-41.)

In some cases, prosecutorial misconduct may be so great as to constitute a violation of the Due Process Clause of the Constitution. *Parker v. Head*, 244 F.3d 831, 838 (11th Cir. 2001). However, "[t]he defense [of outrageous conduct] can be invoked only in the 'rarest and most outrageous circumstances,' and must be supported by more than mere speculation and theory." *United States v. Nyhuis*, 211 F.3d 1340, 1345 (11th Cir. 2000) (second alteration in original; citation omitted). In this case, Springer fails to point to any actual evidence of misconduct, and therefore

---

[5]        Agent Polak had approximately twenty years of experience as an ATF agent when she testified. (Cr. Doc. No. 144 at 252-53.)  Further, she had training in the "Interstate Nexus Training Program" which is designed to prepare ATF agents to determine whether particular firearms affected interstate commerce and are therefore subject to federal regulation. (*Id.* at 254.)

his appellate counsel cannot be labeled ineffective for failing to raise this issue on appeal.  *See id.*
As the Government correctly observes, nothing Springer offers establishes that his son offered false
testimony during the second trial.[6]   Further, the Government did not subpoena Diane Springer
during the second trial, and Springer presents absolutely no evidence that it concealed her location
from him.  In fact, the issue of her whereabouts was repeatedly addressed during the trial, (*see, e.g.*,
Cr. Doc. No. 144 at 21-24, 288-90; Cr. Doc. No. 145 at 72-75), and the Court noted that it was
Springer's counsel, not the Government, who had a responsibility to locate her.  Accordingly, the
prosecutorial misconduct argument lacks merit, and Springer's appellate counsel was not ineffective
for failing to raise it during Springer's appeal.

III.    **Ground Three: Government Misconduct**

        Springer repeats his claim for Government misconduct in ground three, relying on his
ineffective assistance of counsel claim in ground two to provide cause for his procedural default of
this claim.  (Doc. No. 8 at 32-41.)  However, the Court rejected Springer's ineffective assistance of
counsel claim, and he has failed to allege or show other cause for defaulting this argument.  Further,
Springer does not allege or otherwise prove that he is "actually innocent."  Thus, he is prohibited
from raising the Government's alleged misconduct as a ground to vacate his conviction.  *Mills*, 36
F.3d at 1055; *see also Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (ineffective assistance of
counsel as cause for defaulting a claim).

---

        [6]     To the extent Springer argues that his wife offered false testimony during the first
trial, his argument is outside the scope of this Court's review in a section 2255 case.  Springer was
not convicted during the first trial.  *United States v. Julien*, 318 F.3d 316, 323 (1st Cir. 2003)
("Julien makes prosecutorial misconduct claims arising out of both the first and second trials. There
are no claims available related to the first trial because no conviction resulted.").

## IV.    Ground Four: Sentencing

Springer argues that his sentence was imposed according to a mandatory application of the Sentencing Guidelines in violation of *Booker*.  However, as the Government correctly notes, the factual predicate of this argument is incorrect.  The Court sentenced Springer at the bottom of the guideline range, but that fact alone does not establish that it sentenced Springer under the belief that it was required to choose a sentence within the guideline range.   To the contrary, the Court adopted the probation officer's recommendation that the Court follow *Booker* and consider the guidelines to be advisory.  (Cr. Doc. No. 126 at 6-7; Presentence Investigation Report ¶ 19.)  Moreover, the Court's judgment explicitly states that the Court consulted the Sentencing Guidelines "as modified by *United States v. Booker* and *Fanfan*."  (Cr. Doc. No. 126 at 7.)   Accordingly, this ground is without merit.[7]

Any of Petitioner's contentions that are not specifically addressed herein are found to be without merit.

### Conclusion

Based on the foregoing, the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by Person in Custody (Doc. No. 1, filed June 11, 2007) is **DENIED**, and this case is

---

[7]        The  Eleventh Circuit Court of Appeals has explained, "A habeas corpus petitioner is entitled to an evidentiary hearing on his claim 'if he alleges facts which, if proven, would entitle him to relief.'"  *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (quoting *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989)).  However, the Eleventh Circuit continued, "A district court . . . need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel."  *Id.* at 1154.  In other words, "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  *Schriro v. Landrigan*, 127 S. Ct. 1933, 1940 (2007).  A hearing in this case is unnecessary because it can be conclusively determined from the record that Springer was not denied effective assistance of counsel.

**DISMISSED with prejudice.**  The Clerk of the Court is directed to enter judgment in favor of Respondent, close this case, file a certified copy of this Order in Criminal Case 6:04-cr-126-ORL-19DAB, and to terminate the Section 2255 Motion pending in that case at Docket Number 168.

**DONE** and **ORDERED** in chambers in Orlando, Florida, on November 10, 2008.

**PATRICIA C. FAWSETT, JUDGE**
**UNITED STATES DISTRICT COURT**

Copies furnished to:

Counsel of Record
Unrepresented Party